## 6.  WORTH *v.*  DANIEL.

1. There was no error in refusing to strike the plaintiff's petition, and the judgment complained of was demanded by the evidence.
2. The affection and sense of duty which should naturally exist on the part of a child towards an aged and dependent parent is a good consideration to support a contract making provision for her support.
3. The signing of a mutual undertaking to perform a specific common object does not necessarily render a contract unilateral.  Civil Code, § 3661; *Wilson* v. *First Presbyterian Church,* 56 *Ga.* 554.

Complaint, from city court of Douglas—Judge Roan.    February 24, 1906.

Submitted January 8,—Decided January 11, 1907.

*Lankford & Dickerson,* for plaintiff in error.

*Rogers & Heath,* contra.

RUSSELL, J.   Daniel brought suit against Worth in the city court of Douglas, on the written agreement or contract which follows: "State of Georgia, Coffee County.   This is to certify that we, the children of Araminta Daniel, have agreed that each of us pay one & 50/100 ($1.50) dollars per month, on the first of each month, for the support of our mother, as long as she lives.   This is to be paid to either one of her children, where it is agreed upon she stay; wherever she may stay from her own choice.   [Signed] Bettie Worth, Mark Lott, T. H. Daniel, M. Hargraves, Delila Peterson. Witness:  Mark Lott."  The defendant at first contented herself with a denial of all the paragraphs of plaintiff's petition, and a plea of nunquam indebitatus, which was later amplified, on the trial, by an amendment which admitted the execution of the contract sued on but contended that the contract was void.   Before the introduction of testimony the defendant made a motion to dismiss the petition, which was overruled by the court.   The case, by agreement of parties, was submitted to the judge, without the intervention of a jury.   He entered up a judgment in favor of the plaintiff, and the defendant excepted.

As there was no conflict in the evidence, and the judgment rendered in the case was, under the subsequent testimony, inevitable unless some of the grounds of the motion to strike had been sustained, the merits of the present writ of error can be settled by determining whether or not the trial judge erred in refusing to dismiss plaintiff's cause of action.   After a careful review we think his judgment clearly right.   Defendant moved to dismiss

the petition, (1) because plaintiff's petition alleges no cause of action; (2) because the contract sued on is void, and no recovery can be had thereon; (3) because the contract sued on is an effort of the children of Araminta Daniel to contract with themselves, and, for this reason, having only one party, is void; (4) because the contract sued on is unilateral, and for this reason void and of no effect; (5) because the contract sued on is for the payment of money, and it does not appear therein sufficiently to whom said money is to be paid. The exception to the court's disposition of this motion to dismiss is the only assignment of error necessary to be considered. If we are right in our conclusion that the court below should have overruled it, then the judgment should stand. If not, it should be set aside.

Passing first to the grounds in which the pleader attempts to give reasons for the faith that is in him, it is insisted, that the contract is an effort of the children of Araminta Daniel to contract with themselves, and is void; that it has only one party; that the contract is unilateral; and that the contract, being for the payment of money, does not show to whom it is to be paid. We do not think the paper in question is subject to any of these attacks. It sets forth that it is signed by children for benefit of a parent,—a mutual subscription in behalf of such parent. The amount to be paid by each is stated, as is the time of payment and the duration. The party to whom payment is made is to be determined by parol, and the relation stated in the contract supplies a good consideration, founded, not only on natural human affection, but resting also on one of the strongest moral obligations,—that of properly caring for their mother. To our mind, the paper under consideration contains all the essentials prescribed in section 3637 of the Civil Code. It is true it is an executory contract,—one in which something remains to be done by such one of her children as she might select to stay with and who should be a party to the contract. According to the petition then sought to be dismissed, the mother had selected the plaintiff, T. H. Daniel. And if he complied with his part of the agreement,—if his mother stayed at his house and he took care of her,—this performance on his part would bind all other signers of this mutual undertaking.

In the brief of the defendant in error, a ruling of this court is invoked as to the construction of the words "natural duty and

affection," in the Civil Code, § 3658, as applied to the obligation resting upon children of an aged, infirm, and dependent parent for his or her support; and therefore we advert briefly to the law upon this subject. Our Supreme Court has several times construed the words "strong moral obligation." It has been entirely unwilling to go as far as Lord Mansfield in saying that all promises deliberately made should be held binding. In *Davis* v. *Morgan*, *117 Ga.* 507, the court says, that the strong moral obligation referred to in this section "seems to be one supported either by some antecedent legal obligation, though unenforceable at the time, or by some present equitable duty. The section, however, does not relate to the moral obligation which inheres in every promise. . . While all courts recognize the obligation arising from any undertaking, they are, from the necessity of the case, forced to hold that naked promises must depend for their performance solely upon the will of the promisor, and not upon the tribunals which are organized to perform the 'duty of government to protect person and property,' and in pursuance thereof to award money damages for breaches of contracts. Civil Code, § 5699. But they can not enforce promises binding on the conscience, except in those cases where some pecuniary damage flows from the breach, or where, in addition to the moral obligation, the promise is also supported by a consideration. When one receives a naked promise and such promise is broken, he is no worse off than he was. He gave nothing for it, he has lost nothing by it, and on its breach he has suffered no damage cognizable by courts. No benefit accrued to him who made the promise, nor did any injury flow to him who received it. Such promises are not made within the scope of transactions intended to confer rights enforceable at law. They are lightly made, dictated by generosity, courtesy, or impulse—often by ruinous prodigality. To enforce them by a judgment in favor of those who gave nothing therefor would often bring such imperfect obligations into competition with the absolute duties to wife and children, or into competition with debts for property actually received, and make the law an instrument by which a man could be forced to be generous before he was just." In the case cited and quoted from above the court was speaking of dealings between strangers and of promises without consideration, and the judgment of the court below was reversed solely because the contract was

2

without consideration. But natural affection "is a good consideration." Bouvier's Law Dictionary, Vol. 2, 269. And in defining "natural affection" Black uses the same language without qualification. "Natural affection is such as naturally subsists between near relatives, as a father and child, brother and sister, husband and wife. This is regarded in law as a good consideration." The word "father" being interchangeable with "mother" in so far as relationship is concerned, there can be no question that the presumable natural affection of a child for the mother is a good consideration to support a contract. And we feel that the words "natural duty and affection" were not inserted in § 3658 without meaning. They are peculiarly applicable to such cases as the one now under consideration, and no doubt such were in contemplation of the legislative mind in the selection of the phraseology employed in that section. Affection for the mother who gave you birth and supported your every struggling footstep through the helplessness of childhood should follow so spontaneously from the normal natural child that it may be presumed to be "natural," whether it does or does not exist in some particular individual. From the duty of the children to return that affection, when age and dependence have borne down the strength of the parent, "when the windows are darkened and the grasshopper becomes a burden," the law will imply and provide consideration—a good consideration—to support such contracts as this. Natural duty and affection, under section 3658, is as good a basis for good consideration as "strong moral obligation." In the case of children and poor, aged, and dependent parents, this duty and affection should be the very strongest obligation. The neglect of this duty should injure the ungrateful child and subject him to the contempt and hatred of right-thinking men.

But the view taken by the trial judge was right upon still another ground. The mutuality of the promise provided consideration. Section 3661 is in these words: "A promise of another is a good consideration for a promise. So in mutual subscriptions for a common object—the promise of the others is a good consideration for the promise of each." And see decisions cited thereunder. If, as has been held, a subscription to stock in a corporation, a subscription to build churches and schools and various other enterprises, is collectible, certainly a mutual agreement for the support of an

aged mother,—a mutual subscription for a common object, is not void. In the language of the code, "the promise of the others is a good consideration for the promise of each.".

*Judgment affirmed.*